NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2294

_____

UNITED STATES OF AMERICA

v.

ERIC ROJO,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 2-07-00827-001)
Honorable Peter G. Sheridan, District Judge

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 9, 2010

_____

BEFORE:  MCKEE, BARRY, and GREENBERG, Circuit Judges

(Filed: March 29, 2010)

_____

OPINION OF THE COURT

_____

GREENBERG, Circuit Judge.

This matter comes on before this Court on an appeal from a judgment of

conviction and sentence entered on April 29, 2009, following defendant-appellant Eric

Rojo's conviction at a jury trial and subsequent sentencing on both counts of a two-count indictment charging him with conspiracy to distribute and possess with intent to distribute 100 grams or more of a controlled substance (heroin) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 21 U.S.C. § 846 (Count One) and distribution and possession with intent to distribute 100 grams or more of a controlled substance (heroin) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count Two). The District Court sentenced Rojo to concurrent custodial terms of 78 months on each of the two counts to be followed by concurrent four-year terms of supervised release. Rojo appeals, contending that "the admission of [Fed. R. Evid.] 404(b) evidence concerning Rojo's alleged drug purchases and use constitutes reversible error" and "it was error for the District Court to charge the jury on willful blindness." Appellant's br. at 2. The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

The case grew from the relationship between Rojo and a co-conspirator, Alberto Valencia-Mosquera. Though only Rojo is an appellant in this case, the government originally also charged Valencia-Mosquera but he pleaded guilty pursuant to an agreement with the government and testified as a government witness at Rojo's trial. Accordingly, to a large extent the facts that we describe come from his testimony.

The evidence showed that Rojo and Valencia-Mosquera, who were employed at the same appliance store in New York City, had a social relationship during the course of which Valencia-Mosquera, who was a drug dealer, supplied Rojo cocaine for his use. In

2

June or July 2006 an undercover police detective with the Jersey City, New Jersey, police department solicited Valencia-Mosquera to sell him a kilogram of heroin. Inasmuch as Valencia-Mosquera did not have a driver's license and feared facing difficulties if the police stopped him while he was driving to a meeting with the purchaser, he asked Rojo to drive him to the meeting. According to Valencia-Mosquera, he told Rojo the purpose of the meeting, and, as an inducement to Rojo to drive him told Rojo that he would pay him $1,000 if the transaction was completed. Rojo accepted the offer and drove Valencia-Mosquera to the meeting with the detective which was held at Liberty State Park. Valencia-Mosquera reached an agreement at the meeting with the detective for the sale to him of one kilogram of heroin for $54,000 at a later time.

Valencia-Mosquera subsequently advised Rojo that the sale would be completed two days later and asked Rojo to take time off from work to drive him to the meeting. As Valencia-Mosquera requested, Rojo drove him to the place of the contemplated transaction near the entrance to the Holland Tunnel in New Jersey. But before they went to the tunnel they went to a store where Valencia-Mosquera obtained a child's car seat in which to hide the heroin. Then they went to the tunnel where Valencia-Mosquera met the detective who, after looking at the heroin, signaled for other police to assist in making arrests. Valencia-Mosquera fled and escaped but was apprehended about a year later. The police, however, arrested Rojo on the spot.

Rojo testified at the trial and acknowledged that he had driven Valencia-Mosquera

3

to the two meetings we described above. But he denied having any knowledge of the drug transaction and said that he drove Valencia-Mosquera to the meetings as a courtesy to him. Therefore, there was no real dispute as to what happened. Rather, the case centered on what Rojo knew of Valencia-Mosquera's dealings with the detective.

Rojo's contention with respect to Rule 404(b) arises from the District Court's ruling that the government could ask Valencia-Mosquera about his cocaine sales to Rojo that we described above. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Yet, the courts regard Rule 404(b) as a rule of inclusion rather than exclusion, see United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir. 1996), which is understandable because the rule provides that other crime evidence is admissible for numerous purposes including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

It seems obvious that Valencia-Mosquera's knowledge that he and Rojo had engaged in drug transactions, though only on a personal basis so far as Rojo was concerned, made Rojo an ideal candidate for Valencia-Mosquera to ask to help him in the transaction as Rojo's use of drugs suggested that he would not betray Valencia-Mosquera to the police. For that reason from Valencia-Mosquera's perspective the other crime evidence had a legitimate purpose under Rule 404(b) to demonstrate his preparation for the drug transaction and thus buttressed his credibility as a witness. Viewing the Rule

404(b) evidence from Rojo's perspective, the evidence demonstrated his intent, knowledge, and absence of mistake with respect to the transaction to the extent that it tended to rebut Rojo's claim that he thought he was on innocent errands when he chauffeured Valencia-Mosquera to the meetings. In this regard we point out that in its charge at the end of the case the District Court explained to the jury that there had been testimony that Rojo obtained cocaine from Valencia-Mosquera but that it could "consider this evidence only for the purpose of deciding whether Mr. Rojo had the state of mind, knowledge, or intent necessary to commit the crime charged in the indictment." App. at 365-66. Overall, we are satisfied that the District Court did not abuse its discretion in admitting the Rule 404(b) evidence and thus we pass to the jury instruction issue.

We exercise plenary review when determining if a jury instruction correctly states the law, and, when the instruction passes that threshold requirement, we review the district court's wording of the instruction for an abuse of discretion. See United States v. Jimenez, 513 F.3d 62, 74-75 (3d Cir. 2008). Of course, we review the evidence supporting the instruction in the light most favorable to the government as the verdict winner. See United States v. Wert-Ruiz, 228 F.3d 250, 255 (3d Cir. 2000). In its willful blindness instruction the District Court instructed the jury that where knowledge of a particular fact or circumstance is an essential part of the offense the jury may find that the defendant knew of the fact or circumstance if he "deliberately closed his eyes to what would otherwise be obvious to him" and that a person cannot "avoid responsibility for a

5

crime by deliberately ignoring what is obvious." App. at 357-58. In this case the circumstances were such that there was a possibility that a willful blindness instruction might have been appropriate because there is no question but that Rojo as a physical matter participated in the crimes, though he claimed that his role in the transaction was innocent.

Nevertheless Rojo argues that the District Court should not have given the instruction. To support his contention he indicates that a willful blindness instruction "must be supported by evidence which demonstrates sufficiently that the defendant was subjectively aware of the high probability of the underlying facts, and not merely that a reasonable man would have been aware of that probability." Appellant's br. at 31. The government, however, cites United States v. Flores, 454 F.3d 149, 155 (3d Cir. 2006) (internal quotation marks and citation omitted), for the proposition that the prosecution establishes the presence of willful blindness "by proving that a defendant was objectively aware of the high probability of the fact in question, and could have recognized the likelihood of [illicit acts] yet deliberately avoided learning the true facts."

We see no need to focus on the distinction, often elusive in practice, between subjective and objective knowledge. The issue is whether, as Rojo claims, the "decision to . . . instruct [the jury on willful blindness] was reversible error because the facts in evidence did not support [the willful blindness] charge." Appellant's br. at 31. Thus, Rojo does not contend that the District Court erred in its formulation of the willful

6

blindness instruction, a determination that we would make on an abuse of discretion basis, but rather contends that the instruction should not have been given in any form, an argument that requires our plenary review. Here the evidence clearly supported a willful blindness instruction. To start with there is no escape from the fact that Rojo drove Valencia-Mosquera to the Liberty State Park for his first meeting with the detective. Surely even if we set aside Valencia-Mosquera's testimony that he promised to pay Rojo $1,000 for help in a successful sale, testimony that would support a conviction without reliance on a willful blindness theory, it would be expected that Rojo would have asked Valencia-Mosquera to explain the purpose of the trip. Moreover, when Valencia-Mosquera asked Rojo to drive him to the second meeting two days later near the Holland Tunnel, if Rojo remained silent as to what was happening he would have been closing his eyes to the obvious. After all, the evidence demonstrated that Rojo knew that Valencia-Mosquera was a drug dealer who Rojo should have recognized from the conduct that we have described was likely to be engaged in illegal drug activity.

For the foregoing reasons the judgment of conviction and sentence entered April 29, 2009, will be affirmed.